Lindley R. LEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–00648–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 15, 1998.

Kristine C. Woldy, Houston, for Appellant.

John B. Holmes, Eric Kugler, Houston, for Appellee.

Before NUCHIA, MIRABAL and O'CONNOR, JJ.

## OPINION

NUCHIA, Justice.

On May 15, 1996, a jury found appellant, Lindley R. Lee, guilty of the offense of credit card abuse. The trial court assessed punishment at two years in prison, probated for five years, a $500 fine, community service, and a 60-day boot camp term. We affirm.

## BACKGROUND

On September 23, 1995, appellant went to a Neiman–Marcus store and tried to purchase $438.41 worth of merchandise by presenting a "manipulated" American Express card. Upon entering the store, appellant and another individual went to the Polo department, and quickly began picking up a large amount of merchandise. Velma Raty, the sales associate at the Polo department, asked the appellant if she could help him, or if he would like a fitting room to try on his selec-tions. Appellant said "no," that he was just looking, and then continued picking up clothes. Raty thought the behavior was suspicious.

When appellant finished picking out clothing, he took merchandise valued over $400 to Raty and presented an American Express card. The card had the name of Alan Thang Nguyen on the front. Raty passed the card through the electronic device which reads the magnetic tape on the back of the card and charges the purchase to the account number.

Jose Rodriguez, Neiman's loss-prevention investigator, monitored appellant and his friend via video surveillance from the time they entered the store. Rodriguez was suspicious of appellant because appellant's quick selection of merchandise was a "calling card" that there was a problem.

When appellant presented the credit card to Raty, she called Rodriguez for authorization, and gave him the account number on the face of the card. Rodriguez called the American Express fraud department and asked them to run the card number on the face of the card. American Express could not verify that the card was fraudulent, so Rodriguez told Velma Raty to approve the transaction if appellant could produce identification. Appellant could not produce a driver's license or any other form of identification. Raty asked appellant how he got to Neiman Marcus if he did not drive, and he responded that his friend drove.

The transaction was voided, and appellant took the card and left the store. Jose Rodriguez followed appellant and saw him enter a vehicle on the driver's side, and start the car. Rodriguez recorded appellant's license plate number before appellant drove the car away.

Upon examining the records of the transaction, Rodriguez learned that the number imprinted on the front of the card did not match the name and number encoded in the magnetic strip on the back of the card. The card number on the front belonged to Alan Thang Nguyen. According to American Express, Nguyen's account was closed. The magnetic tape on the back of the card contained a different account number. This account number was active, and belonged to

Michelle Ann Smith. Upon learning these facts, Rodriguez turned the investigation over to American Express, and eventually to the Harris County Sheriff's Department. Appellant was arrested, but the credit card was not recovered.

Alan Bolton, a special investigator for American Express, testified at trial that the number and name on the front of the card did not match the magnetically encoded account number on the back of the card. Bolton explained that this condition indicated that the card had been manipulated by special electronic equipment and was part of a scheme to prevent the presenter from having to pay the bill.

Appellant was tried, and found guilty of credit card abuse. Appellant urges two points of error.

## DISCUSSION

### Legal Sufficiency

Appellant challenges the legal sufficiency of the evidence to support the guilty verdict on the grounds that there was no evidence in the record that the cardholder alleged in the indictment was the cardholder of the card presented by appellant.

When conducting a legal sufficiency review, we must view the evidence in the light most favorable to the verdict. *Martinez v. State*, 924 S.W.2d 693, 696 (Tex.Crim. App.1996). Under this standard of review, the issue is whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Martinez*, 924 S.W.2d at 696; *Green v. State*, 891 S.W.2d 289, 297 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes the evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988); *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

In determining the sufficiency of the evidence, we weigh the evidence against a correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The jury was properly charged under Tex. Penal Code Ann. § 32.31(b)(1)(A), "a person commits an offense if with intent to obtain a benefit fraudulently, he presents or uses a credit card with the knowledge that the card has not been issued to him and with knowledge that the card is not used with the effective consent of the cardholder." Tex. Penal Code Ann. § 32.31(b)(1)(A) (Vernon 1994). A "cardholder" is defined as "the person named on the face of a credit card or debit card to whom or for whose benefit the card is issued." Tex. Penal Code Ann. § 32.31(a)(1) (Vernon 1994). A "credit card" is defined as "an identification card, plate, coupon, book, number, or any other device authorizing a designated person or bearer to obtain property or services on credit. 'Credit card' includes the number or description of the device if the device itself is not produced at the time of ordering or obtaining the property or service." Tex. Penal Code Ann. § 32.31(a)(2) (Vernon 1994).

Appellant argues that because Michelle Ann Smith's name was not on the front of the "manipulated" credit card, she is not the cardholder, and the evidence is therefore insufficient. Appellant cites several cases in support of his point. However, these cases address the situation where a second party is issued an "extra" card on an account, and this card is abused. *See Harrell v. State*, 852 S.W.2d 521, 524 (Tex.Crim.App.1993); *Jones v. State*, 611 S.W.2d 87, 89 (Tex.Crim.App. 1981); *Colley v. State*, 893 S.W.2d 298, 300 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); *Jefferson v. State*, 701 S.W.2d 323, 324 (Tex.App.—Dallas 1986, pet. ref'd). In each of these cases, the State improperly alleged that the person in whose name the account was established was the cardholder, but the credit card abused was actually issued to another person by the credit card company as an "extra" card, and that person's name appeared on the face of the card.

In this case, no issuance of an extra card on Smith's account is involved. American Express did not issue this card to Nguyen on Smith's account. The electronically manipulated credit card presented to the merchant

was merely Smith's American Express account number, illegally placed on the back of the credit card of another. Michelle Ann Smith testified that she had not lost her credit card, and it had not left her possession.

In the definition of "credit card," the Texas Penal Code states that where the actual credit card itself is not produced at the time of ordering or obtaining property or service, the credit card account number is considered the credit card. TEX. PENAL CODE ANN. § 32.31(a)(2) (Vernon 1994). Because Smith's credit card was not presented, Smith's account number became the "credit card" for purposes of the statute, and because Smith's name is on the face of "a credit card or debit card to whom or for whose benefit the card is issued," she is the "cardholder." *See* TEX. PENAL CODE ANN. § 32.31(a)(1) (Vernon 1994).

The State properly alleged in the indictment and jury charge that Michelle Ann Smith was the cardholder. The evidence is legally sufficient to support the guilty verdict in this case.

We overrule appellant's first point of error.

### Lack of Consent

Appellant urges in his second point of error that the evidence is legally insufficient to support the conviction because the State failed to prove that the "Michelle Ann Smith" who testified to lack of consent was the same person as the "Michelle Ann Smith" who was the American Express account holder of the specific number involved. At trial, a Michelle Ann Smith appeared and testified that she did not give consent to appellant to use her account. The testifying Michelle Ann Smith stated that she did have an American Express card, it had not left her possession, and she did not give appellant consent to use it. Appellant argues that because there was no direct testimony by Michelle Ann Smith establishing that she was the holder of the card used in this case, there was no evidence that the card of Michelle Ann Smith was used without her consent.

Lack of consent is a necessary element of credit card abuse. *See* TEX. PENAL CODE ANN. § 32.31 (Vernon 1994); *Jefferson*, 701 S.W.2d at 324. As with other criminal offenses that require a lack of effective consent, it may be proven solely by circumstantial evidence. *Hathorn v. State*, 848 S.W.2d 101, 106–107 (Tex.Crim.App.1992) (murder with intent to commit burglary); *Prescott v. State*, 610 S.W.2d 760, 763 (Tex.Crim.App. 1981) (burglary with intent to commit rape); *Williams v. State*, 591 S.W.2d 873, 875 (Tex. Crim.App.1979) (lack of consent proven by circumstantial evidence where thief stuck dress in his jacket, and it hung down behind him as he walked out of store); *Ashby v. State*, 604 S.W.2d 897, 901 (Tex.Crim.App. 1979) (lack of consent proven by circumstantial evidence where thief took unpurchased vacuum cleaner off store shelf to customer service department for refund); *Taylor v. State*, 508 S.W.2d 393, 397 (Tex.Crim.App. 1974) (lack of consent circumstantially proven where homeowner gave chase to burglars, fired gun in air, and apprehended them); *Lucious v. State*, 828 S.W.2d 118, 122 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (lack of consent in purse theft was circumstantially proven where victim had been thrown to ground and face shoved to concrete); *Ceasar v. State*, 661 S.W.2d 256, 257 (Tex.App.—Houston [1st Dist.] 1983, no pet.) (lack of consent proven where victim held up at gun point). This circumstantial evidence is admissible even if the victim testifies. *Taylor*, 508 S.W.2d at 397; *Prescott*, 610 S.W.2d at 763; *Watkins v. State*, 643 S.W.2d 788, 789 (Tex.App.—San Antonio 1982, pet. ref'd).

Although the State could have performed a much better job of tying the testifying Michelle Ann Smith to the Michelle Ann Smith that was the cardholder, under the facts of this case, her testimony was not the only means of establishing lack of consent. The jury heard from American Express investigator Bolton that appellant presented a credit card belonging to the closed account of Alan Nguyen, which had been electronically manipulated by special equipment not commonly found in the public domain, so that it had the active account number of Michelle Ann Smith appended onto the back. Further, Bolton testified that such manipulation

was part of a scheme to prevent the presenter from having to pay the bill. It was reasonable for a jury to infer from this evidence that the cardholder did not consent to this manipulation involving her account number, or to the use of her account number by the appellant.

The jury also saw State's exhibit 3, the American Express computer printout of the abused account, which was entered in conjunction with the testimony of Bolton. This exhibit demonstrates that the account that appellant attempted to use belonged to a Michelle Ann Smith. Bolton also testified that Michelle Ann Smith had been notified of the abuse of her credit card.

The jury viewed the actual video tape of appellant's actions in the store. They saw appellant quickly pick up a large quantity of merchandise in a suspicious manner, and present a credit card for which he did not have supporting identification. The jury also heard Rodriguez and Raty testify as to appellant's actions. They heard testimony from Rodriguez that appellant lied about not driving.

Based upon the totality of the evidence, a jury could rationally have found that appellant did not have the consent of the cardholder, and that appellant knew he did not have that consent.

We overrule appellant's second point of error.

We affirm.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

Circumstantial evidence cannot bridge all gaps in proof. The gap in the State's proof here is that it did not prove who owned the credit card account number which the appellant used. The appellant contends the State did not prove that the "Smith" who was called to testify for the State was the same "Smith" who was the holder of American Express account number

1. At trial, Ms. Smith did not indicate that she had closed her American Express account or changed the number of the account. Because

* * * * * * * * *.[1] The appellant is correct.

The indictment charged the appellant as follows

Defendant, on or about September 23, 1995, did then and there unlawfully, with intent to obtain a benefit fraudulently, use and present ... an American Express credit card knowing the use was without the effective consent of the cardholder, Michelle Ann Smith....

The State proved that the appellant used an American Express card which had the account number * * * * * * * * * on the magnetic tape on the back of the card. The State also proved from American Express records that the account number used by the appellant belonged to a person by the name of Michelle Ann Smith. The State called a person by the name of Michelle Ann Smith to testify that she did not give the appellant permission to use her American Express account number. The State did not prove that the person they called to testify was same Michelle Ann Smith who owned American Express account number * * * * * * * * *. For all we know, the Michelle Ann Smith who testified owned a completely different account number.

The State called Michelle Ann Smith for the purpose of proving the appellant did not have her consent to use her American Express account number * * * * * * * * *. To prove that, Smith should have been asked to provide sworn proof about two facts: (1) she did not give the appellant permission to use her account number; and (2) she owned American Express account number * * * * * * * * *. Smith testified she did not give the appellant consent to use her account number, which covered the first fact. Smith did not identify her account number, the second fact.

Ms. Smith's testimony was as follows:

[Direct examination by the State]

Q: Ms. Smith, do you have or do you possess an American Express credit card?

this opinion is to be published, asterisks are substituted for the account number.

Q: A: Yes, I do.

Q: Do you know what the number is on that card?

A: To my knowledge, at this point I don't, but it's in my purse.

Q: Have you ever lost that credit card?

A: No.

Q: Do you know anyone by the name of Lindley Lee?

A: No.

Q: Did you ever give anyone by the name of Lindley Lee consent to use the numbers on your credit card?

A: No.

Q: Did you ever give anyone by the name of Lindley Lee [consent] to use your credit card at all?

A: No.

[Cross-examination by the defense.]

Q: If I understand your testimony, you have had your card in your possession; is that correct?

A: Correct.

Q: But you have not given anyone permission to use your account number; is that correct?

A: That's correct.

The State did not prove that American Express account number * * * * * * * * *, which was the one used by the appellant, belonged to the same Michelle Ann Smith who testified she did not give the appellant permission to use her credit card number.

The majority admits the State did not prove the testifying Smith was the same person as the cardholder Smith, but then states "her [cardholder Smith's] testimony was not the only means of establishing lack of consent." Under the majority's analysis, any manipulated charge card is, by definition, used without the consent of the cardholder. Under that holding, it would not be necessary for the State to call the owner of the charge account number to testify that she did not give consent.

I disagree. The State did not have an insurmountable burden of proof. In fact, the State simply made a mistake. The State should have asked the Michelle Ann Smith to retrieve her credit card from her purse and identify her account number.