Opinion issued May 1, 2008









 






In The
Court of Appeals
For The
First District of Texas




NOS. 01-07-00238-CR
          01-07-00239-CR




JAMES HAYES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause Nos. 1083785, 1083786



 

MEMORANDUM OPINION

          Appellant, James Hayes, appeals from the trial court’s judgments convicting
him for credit card abuse and for fraudulent use or possession of identifying
information.


 See Tex. Pen. Code Ann. § 32.31 (Vernon Supp. 2007) (credit card
abuse); Id. § 32.51 (fraudulent use or possession of identifying information). The
jury assessed appellant’s punishment at two years in state jail and a $10,000 fine for
each case. In three issues, appellant challenges the legal and factual sufficiency of
the evidence to support his convictions and the effectiveness of his trial counsel. We
conclude that the evidence is legally and factually sufficient to support appellant’s
convictions and that appellant has not met his burden to show ineffective assistance
of counsel. We affirm the trial court’s judgments.
 
 
 
 
 
 
Background
          On August 23, 2006, appellant placed an order for a set of diamond earrings
valued at $5,031 from Diamonds.com, an online jeweler operating out of Las Vegas.
Appellant purchased the earrings with a MasterCard issued to Dean Alac. Appellant
requested an expedited delivery of the earrings to P. Vital, care of Diana Alac, at a
hotel in Atlanta, Georgia. 
          Verisign, the company that screens credit card purchases for Diamonds.com,
initially declined the order, informing appellant of the decision by email. When
appellant called to inquire about the order, Christine Smith, a customer service
representative, told him to call his bank. Smith later received another call from
appellant, who said the issue was resolved. However, the card was declined a second
time. Smith set up a conference call between the issuing bank, herself, and appellant
to determine if the transaction could be authorized. During this call, appellant was
able to provide the bank with answers to security questions, such as the last four
digits of Dean’s Social Security number and Dean’s mother’s maiden name. During
his conversations with Smith, appellant mentioned that the earrings were a gift for his
wife who was visiting P. Vital, a relative. Smith, knowing that most people sending
gifts do not want an invoice to arrive with the gift purchase, mailed the invoice to the
billing address for Dean’s credit card in California, not to the Atlanta address.
          Five days after the order was placed, appellant telephoned Diamonds.com and
spoke to Smith, who recognized his voice. Appellant told Smith that his wife was
happy with the gift, stating that he wanted to place another order. Appellant ordered
a single platinum and diamond earring for $4,487, which he requested to be shipped
to Dean Alac in Houston, Texas.
          Two days later, Diamonds.com received a call from a woman who identified
herself as Diana Alac. She stated that she received the invoice for the set of diamond
earrings and that neither she nor her husband, Dean Alac, had placed the order. Dean
called Diamonds.com later that day and spoke to Sherri Hendricks, the vice-president
of operations. He told Hendricks that he had not placed any orders with the company
and had not ever heard of it before. When Hendricks asked him if he had placed a
second order for an earring, Dean replied that he had never placed an order with the
company. Hendricks advised him to report the incident as fraud. As a result of the
communications with Dean and his wife, Hendricks advised the company’s New
York office not to ship the single platinum and diamond earring.
          Hendricks contacted the Atlanta hotel to which the first order had been
shipped. Hendricks learned that someone using the name Percy Vital had stayed there
but had since checked out. Hendricks contacted the Atlanta police, who advised her
to contact the Houston police because the second order was to be shipped to Houston. 
Hendricks complied by contacting the Houston police.
          Hendricks agreed to assist the police in setting up a sting operation to attempt
to arrest the person who had made the orders. During that time, Hendricks spoke to
appellant on the telephone at least five times and also communicated with him
through several emails. At one point, appellant directed Hendricks to ship his order 
to Houston “attn: p. vital houlahans restaurant.” Hendricks informed appellant that
the order would be shipped on September 6, 2006, via overnight FedEx delivery, to
the Hilton Homewood Suites on Sage Road in Houston.
          On September 7, 2006, an undercover Houston police officer who was assigned
to the financial crimes unit went to the Homewood Suites on Sage Road. The officer,
who was wearing a FedEx uniform and carrying a FedEx box, entered the hotel lobby. 
When the manager saw the undercover officer, he told him that a client was waiting
for him around the corner, wearing a linen suit. 
          As appellant stopped him, the officer asked if appellant was Dean Alac.
Appellant acknowledged that he was the recipient of the package and signed a receipt
for delivery of the package by signing Percy Vital’s name. The officer identified
himself as a Houston police officer and arrested appellant.
          After arresting appellant, the officer inventoried the contents of appellant’s
wallet. In appellant’s wallet was a Texas driver’s license issued to Percy Vital. A
driver’s license check revealed that the license had been reported stolen by Vital, who
reported identity theft in 2005. Vital stated that he did not know appellant and that
appellant did not have permission to be in possession of his license.
Sufficiency of the Evidence
          In his first two issues in each of the cases, appellant challenges the legal and
factual sufficiency of the evidence to support his convictions. 
A.      Standard of Review
          1.       Legal Sufficiency
          In a legal sufficiency review, we consider the entire trial record to determine
whether, viewing the evidence in the light most favorable to the verdict, a rational
jury could have found the accused guilty of all essential elements of the offense
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005). In conducting our review of the legal sufficiency of the evidence, we do not
reevaluate the weight and credibility of the evidence; rather, we ensure only that the
jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.
App. 1993). 
 
 
          2.       Factual Sufficiency
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 10–11 (Tex. Crim.
App. 2000). Under the first prong of Johnson, we cannot conclude that a conviction
is “clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
          We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence
because that determination depends on the fact-finder’s evaluation of credibility and
demeanor. Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). As the
determiner of the credibility of the witnesses, the fact-finder may choose to believe
all, some, or none of the testimony presented. Id. at 407 n.5.
B.      Credit Card Abuse
          In the appeal of the conviction for credit card abuse, appellant contends that the
evidence is legally and factually insufficient to support the conviction. Appellant
asserts that (1) Dean did not “testify that the appellant did not have his consent to use
MasterCard”; (2) there were no recordings of the impostor Dean Alac’s voice; and (3)
the email address used in connection with the orders from Diamonds.com was
registered to Melinda Cook, not appellant. 
          The elements of credit card abuse are that a person (1) with intent to obtain a
benefit fraudulently, (2) presents or uses a credit card, (3) with knowledge that the
card has not been issued to him, and (4) without the effective consent of the
cardholder. See Tex. Pen. Code Ann. § 32.31(b)(1)(A). Credit case abuse “includes
the number or description of the device if the device itself is not produced at the time
of ordering or obtaining the property or service.” Id. § 32.31(a)(2), (4). 
          A person acts with intent when it is his conscious objective or desire to engage
in the conduct or cause the result. Id. § 6.03(a) (Vernon 2003). Intent is most often
proven through the circumstantial evidence surrounding the crime, rather than
through direct evidence. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App.
1991). A jury may infer intent from any facts that tend to prove its existence, such
as the acts, words, and conduct of the defendant. Id. Likewise, a cardholder’s lack
of effective consent may be proven solely by circumstantial evidence. Lee v. State,
962 S.W.2d 171, 174 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d, untimely
filed).
          At the outset, we note that neither intent to harm the complainant nor actual
harm to complainant are elements of credit card abuse. See Tex. Pen. Code Ann.
§ 32.31(b)(1)(A). We therefore reject appellant’s challenges to the sufficiency of the
evidence on the grounds that “[t]he record further reflects that the complainant was
not harmed by the incident and the evidence fails to prove that the appellant intended
to harm the complainant.” 
          1.       Legal Sufficiency
          Viewing the evidence in a light most favorable to the trial court’s judgment, the
record established appellant’s identity as the person who committed the credit card
abuse. Smith and Hendricks each identified appellant’s voice as that of the man who
claimed to be Dean Alac when the order was placed for the diamond and platinum
earring and the subsequent communications with Diamonds.com. Also, appellant
presented the information for Dean’s MasterCard to pay for the earring. Further,
appellant identified himself to the undercover officer as Dean Alac, but signed for the
package using the name of Percy Vital, for whom he had a driver’s license.
          Viewing the evidence in a light most favorable to the trial court’s judgment, the
record also establishes appellant’s lack of consent to use the credit card. Hendricks
testified that appellant had no consent to use the card, based on information obtained
from Dean Alac.
          A rational jury could have found beyond a reasonable doubt that appellant
placed the order for the diamond and platinum earring using Dean’s credit card
without effective consent, knowing that it had not been issued to appellant, and with
an intent to obtain a benefit fraudulently. We hold the evidence is legally sufficient
to support the conviction for credit card abuse. We overrule appellant’s first issue in
the credit card abuse case.
          2. Factual Sufficiency
          In his second issue in the appeal from the conviction for credit card abuse,
appellant asserts that the evidence is factually insufficient for the same reasons that
he contends it is legally insufficient. 
          Concerning the evidence that establishes his identity as the credit card abuser,
appellant accurately notes that no voice recordings exist and the email address used
in connection with the orders from Diamonds.com was registered to Melinda Cook,
not appellant. Although the email address does not connect appellant, the contents
of the emails do. The contents of the emails were consistent with the telephone
conversations that Hendricks and Smith had with appellant. Also, one of the emails
requested that the earring be shipped to Houston “attn: p. vital houlahans restaurant”. 
That email’s reference to Vital matches the information on the driver’s license for
Vital that was found in appellant’s possession.
          Appellant accurately notes that Dean Alac did not testify about the lack of
consent. However, appellant’s lack of consent was established by Hendricks, who
conveyed that Dean stated that he did not place any orders with Diamonds.com. 
Appellant also suggests that the evidence supports the inference, which should be
drawn from the absence of testimony from Dean or his wife, that Dean did not want
to explain the diamond purchases to his wife. Although appellant suggests this
theory, the jury implicitly rejected it as not credible by its determination that appellant
fraudulently used the card. Appellant’s intent to obtain a benefit fraudulently and his
knowledge that the card had not been issued to him are shown by the same evidence
showing that he used the MasterCard issued to Dean Alac to order the diamond and
platinum earring. Additionally, the possession of the driver’s license for Percy Vital
and appellant’s use of that name when signing for the package indicate that he wished
to conceal his true identity. 
          Viewing the above evidence neutrally, we cannot conclude that the evidence
is so weak that the verdict is clearly wrong and manifestly unjust or that the verdict
is against the great weight and preponderance of the evidence. We hold the evidence
is factually sufficient to support the conviction for credit card abuse. We overrule
appellant’s second issue in the credit card abuse case.
C.      Fraudulent Use or Possession of Identifying Information
          In the first two issues of the appeal in the fraudulent use of identifying
information case, appellant contends that the evidence is legally and factually
insufficient because “the record fails to show that the appellant intended to harm or
defraud another, beyond a reasonable doubt.” One of the elements of fraudulent use
of identifying information is that the defendant acted with intent to harm or defraud
another. See Tex. Pen. Code Ann. § 32.51(b)(1). This is the only element
challenged by appellant.
            Viewing the evidence in the light most favorable to the jury’s verdict,
appellant’s intent to harm or defraud another is shown by his possession of a driver’s
license that was reported stolen, coupled with the use of the name on the license to
purchase a diamond earring purchased with a MasterCard issued in another name. 
Appellant at one point sought to have the earring shipped to “p. vital.” Appellant
signed for the package delivered by the undercover officer using the name Percy
Vital. A rational jury could have found beyond a reasonable doubt that appellant was
attempting to conceal his true identity in an attempt to avoid paying for the earring. 
We hold the evidence is legally sufficient to sustain the conviction for the fraudulent
use of identifying information. We overrule appellant’s first issue in the fraudulent
use case.
          In his second issue in the fraudulent use case, appellant contends that the
evidence is factually insufficient to show that he intended to harm or defraud another,
asserting the same reason as in his legal sufficiency challenge. Although the email
address used in connection with the order for the jewelry did not contain appellant’s
name, the contents of the emails were consistent with the telephone conversations that
appellant had with Hendricks, as detailed above. Appellant’s intent to defraud or
harm another is shown by evidence that he was in possession of a driver’s license that
had been reported stolen, and he used the name on the license to sign for a package
that had been fraudulently ordered using another person’s credit card. 
           Appellant repeats his suggestion that Dean was concealing the purchase of the
diamond jewelry from his wife. As we have explained above, the jury implicitly
rejected this theory in finding appellant guilty. 
           Viewing the above evidence neutrally, we cannot conclude that the evidence
is so weak that the verdict is clearly wrong and manifestly unjust or that the verdict
is against the great weight and preponderance of the evidence. We hold that the
evidence is factually sufficient to support the conviction for fraudulent use of
identifying information. We overrule appellant’s second issue in the fraudulent use
of identifying information case.
Ineffective Assistance of Trial Counsel
          In his third issue in both appeals, appellant contends that he received
ineffective assistance of counsel because his trial counsel “failed to object to
inadmissible hearsay throughout the trial and failed to object to violation of the Sixth
Amendment right to confrontation where the complainant was not present to testify
at trial.” 
          In evaluating contentions of ineffective assistance of counsel, we review the
totality of the representation. Wright v. State, 223 S.W.3d 36, 42 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d). To prevail on a claim of ineffective
assistance of trial counsel, the defendant must objectively show that (1) trial counsel’s
performance was deficient and (2) a reasonable probability exists that the result of the
proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687,
104 S. Ct. 2052, 2064 (1984). The first prong of the Strickland test requires the
defendant to show that counsel’s performance fell below an objective standard of
reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 
Thus, the defendant must prove objectively, by a preponderance of the evidence, that
trial counsel’s representation fell below professional standards. Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002). The second prong requires the defendant
to show a reasonable probability that, but for counsel’s unprofessional errors, the
result of the proceeding would have been different. See Strickland, 466 U.S. at 694,
104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812. The “benchmark” for evaluating a
challenge of ineffective assistance of counsel is whether counsel’s conduct “so
undermined the proper functioning of the adversarial process” that one cannot rely
on the trial “as having produced a just result.” See Ex parte Chandler, 182 S.W.3d
350, 353 (Tex. Crim. App. 2005). Only in that relatively rare instance may the
defendant obtain a new trial on the grounds that his attorney provided constitutionally
deficient assistance. Id. at 353–54. The constitutional right to counsel ensures the
right to reasonably effective counsel, not “errorless counsel whose competency or
accuracy of representation is . . . judged by hindsight.” Mercado v. State, 615 S.W.2d
225, 228 (Tex. Crim. App. 1981). 
          The reviewing court must, however, indulge a strong presumption that
counsel’s conduct falls within the wide range of reasonable professional assistance,
and the defendant must overcome the presumption that, under the circumstances, the
challenged action “might be considered sound trial strategy.” Strickland, 466 U.S.
at 689, 104 S. Ct. at 2065. This rule even extends to situations in which the appellate
court may “have trouble understanding why” trial counsel may have acted as he did
before the trial court. Ex parte Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001). 
A Strickland challenge must, therefore, be “firmly founded” in a record that
“affirmatively demonstrate[s]” the meritorious nature of the claim. Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). When counsel’s reasons for
failing to do what the defendant contends should have been done do not appear in the
record—as, for example, when trial counsel has not been afforded an opportunity to
explain his actions—we should not find deficient performance unless the challenged
conduct was “so outrageous that no competent attorney would have engaged in it.” 
Id. Unless contentions of ineffective assistance are clearly demonstrated of record,
we normally will not speculate to find trial counsel ineffective when the record is
silent on his reasoning or strategy. See Henderson v. State, 29 S.W.3d 616, 624 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d); Gamble v. State, 916 S.W.2d 92, 93
(Tex. App.—Houston [1st Dist.] 1996, no pet.). 
          Under normal circumstances, the record on direct appeal will not be sufficient
to demonstrate that counsel’s representation was so deficient and so lacking in
tactical or strategic decision-making as to overcome the presumption that counsel’s
conduct was reasonable and professional. See Thompson, 9 S.W.3d at 813–14. When
the record on direct appeal is sufficient to prove that counsel’s performance was
deficient, however, an appellate court “should obviously address the claim . . . .” 
Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).
          In this case, there was no motion for new trial and, thus, we do not have a
record that reveals trial counsel’s reasoning for not objecting to the hearsay
statements. We must therefore presume that trial counsel had a valid reason for not
objecting. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Ex parte Varelas, 45
S.W.3d at 632; see also McKinny v. State, 76 S.W.3d 463, 473 (Tex. App.—Houston
[1st Dist.] 2002, no pet.) (noting, in context of ineffective assistance claim, that
“advocates must be free to choose not to make [objections] even if they have a legal
basis for doing so”). 
          Although appellant contends that his trial counsel failed to object to
inadmissible hearsay concerning Dean Alac’s statements about appellant’s lack of
consent to use of the credit card, the record does not show the reasons for that
conduct by counsel, and we cannot conclude that there could be no plausible reason
for opting not to object to that testimony. See Ortiz v. State, 93 S.W.3d 79, 95 (Tex.
Crim. App. 2002) (“Defense counsel might have believed that such direct evidence
would have a more powerful and adverse effect on the jury than the [hearsay]
evidence the State was content to offer.”). Because the record is silent regarding trial
counsel’s reasoning for not objecting to the introduction of the hearsay statements,
we may not speculate to find counsel’s performance deficient. See Perez v. State, 56
S.W.3d 727, 731–32 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (overruling
ineffective assistance claim where trial counsel failed to object to inadmissible
statement but record was silent concerning reason for counsel’s action).
          With respect to his conviction for fraudulent use or possession of identifying
information, appellant also contends that his appointed trial counsel was ineffective
because “no mention was made of the fraudulent use or possession of identification
case, Cause Number 1083786, in the closing argument made by the Defense.” 
However, the record shows that in closing argument before the jury, appellant’s trial
counsel stated,
I fear that in connection with the second case that my client obtained,
possessed or used identifying information of another without consent,
I fear there’s no evidence to contradict that in this case and that you --
it’s incumbent upon you to find him guilty of that charge.

Counsel may choose to argue a client is guilty as part of a trial strategy. For example,
in this case, the uncontradicted evidence was that appellant possessed the driver’s 
 
license belonging to Percy Vital and signed for a package “P. Vital.” By conceding
guilt on this undisputed evidence, counsel could have been hoping that he would gain
credibility before the jury in arguing the credit card abuse case or in the punishment
phase. See Florida v. Nixon, 543 U.S. 175, 190–93, 125 S. Ct. 551, 562–63 (2004)
(holding defense counsel’s strategy of conceding guilt at guilt-innocence stage of
capital trial does not automatically render counsel’s performance deficient). As noted
above, we may not speculate concerning appointed counsel’s reasoning in an
ineffective assistance claim. See Goodspeed, 187 S.W.3d at 394; Henderson, 29
S.W.3d at 624; Gamble, 916 S.W.2d at 93. We hold that the record does not
affirmatively demonstrate that appellant’s appointed counsel rendered constitutionally
ineffective assistance.
          We overrule appellant’s third issue in both of the appeals.
Conclusion
          We affirm the trial court’s judgments.
 


 
Elsa Alcala
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. See Tex. R. App. P. 47.2(b).